**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
.
*In re:*                                          .
.                                                 Chapter 13
.
ERIN A. SHERWOOD,                                 .
.                                                 Case No. 15-10637 (JLG)
.
*Debtor*                                          .
.
------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO (I) APPROVE THE SURRENDER OF REAL PROPERTY TO SECURED CREDITORS, (II) EXPUNGE PROOFS OF CLAIM FILED BY SECURED CREDITORS, AND (III) VEST TITLE TO PROPERTY IN SECURED CREDITORS UPON CONFIRMATION

**A P P E A R A N C E S :**

SHAEV & FLEISCHMAN, LLP
1430 Broadway
Suite 1802
New York, New York 10018
By:     David B. Shaev, Esq.

*Attorneys for Erin A. Sherwood*

ROSICKI, ROSICKI & ASSOCIATES, P.C.
51 East Bethpage Road
Plainview, New York 11803
By:     Barbara Dunleavy, Esq.

*Attorneys for Branch Banking & Trust Company*

**JAMES L. GARRITY, JR.**
**United States Bankruptcy Judge**

Before the Court is the motion (the "**Motion**") of Erin A. Sherwood (the "**Debtor**") to

(i) approve the surrender of certain real property owned by the Debtor in full satisfaction of the

secured claims of Branch Banking & Trust Company ("**BB&T**") and Oak Grove HOA ("**Oak**

**Grove**"), (ii) expunge the proofs of claim filed by BB&T and Oak Grove, and (iii) approve the

vesting of title to the property in BB&T upon confirmation of the Debtor's chapter 13 plan. (*See*

Motion, ECF No. 25.[1]) According to the Debtor, such relief is permissible pursuant to sections

1322 and 1325 of the Bankruptcy Code, which permit a chapter 13 plan to, *inter alia*, provide for

the surrender of property to a secured creditor, 11 U.S.C. § 1325(a)(5)(C), and the vesting of

property "in the debtor or in any other entity," *id.* § 1322(b)(9).

BB&T opposes the Motion. In its opposition (the "**Opposition**"), BB&T concedes that

the Debtor is entitled to surrender property through her plan pursuant to section 1325(a)(5)(C),

but argues that she may not compel BB&T to accept title to the property under section

1322(b)(9) so long as BB&T objects to such treatment. (Opp'n ¶¶ 8-11, ECF No. 28.) Among

other authorities, BB&T relies on a prior decision of this Court holding that, "[w]hen a secured

creditor timely objects to the confirmation of a [chapter 13] plan that proposes to vest title in that

creditor, the court cannot confirm the plan." *In re Malave*, No. 13-13348 (ALG), at *3 (Bankr.

S.D.N.Y. Apr. 11, 2014) (Gropper, J.) ("*Malave*").

As discussed below, the Court concludes that the Debtor has failed to show that her plan

may be confirmed over BB&T's objection. Accordingly, the Motion is **DENIED.**

### *Jurisdiction*

The United States District Court for the Southern District of New York has jurisdiction

over this contested matter pursuant to section 1334 of title 28 of the United States Code. This

Court exercises authority over the matter pursuant to section 157 of title 28 and the District

Court's standing order of reference for bankruptcy cases and related proceedings. *See* Am.

Standing Order of Reference, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska,

C.J.). This matter is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (L).

---

[1]   Except where otherwise noted, references to "ECF" refer to the electronic docket maintained in the Debtor's
chapter 13 case, No. 15-10637 (JLG).

*Background*

The relevant facts are undisputed. The Debtor owns a residential condominium unit located at 3487-3C Forestdale Drive in Burlington, North Carolina (the "**Property**"). According to the Debtor's Schedule A, the Property is valued at approximately $77,350. BB&T holds a first priority mortgage claim against the Property in the amount of $89,430.64. In addition, Oak Grove holds a secured claim against the Property for outstanding homeowners' association dues in the amount of $1,328. BB&T and Oak Grove filed Proofs of Claim No. 4 and 5, respectively, on account of their secured claims.

On September 26, 2014, the Debtor filed a chapter 7 case in this Court. (*See* Pet., No. 14-12722 (MG), ECF No. 1.) On January 7, 2015, the Debtor received a discharge in that case. (*See* Discharge & Final Decree, No. 14-12722 (MG), ECF No. 9.) On March 19, 2015, after receiving her discharge in the chapter 7 case, the Debtor filed this chapter 13 case.[2] On September 28, 2015, the Debtor filed her second amended chapter 13 plan (the "**Plan**") in this case. (*See* Plan, ECF No. 24.) Under the Plan, no payments will be made to BB&T or Oak Grove on account of their secured claims.[3] Instead, the Property will be surrendered and title thereto will vest in BB&T upon confirmation of the Plan. (*Id.* at 8-9.[4]) Such treatment shall be in full satisfaction of the secured claims against the Property. (*Id.* at 9.)

---

[2]   This case is a "chapter 20" case, a colloquial term used to describe a chapter 13 case that is filed shortly after the debtor receives a discharge in a prior chapter 7 case. *See In re Wapshare*, 492 B.R. 211, 214 n.2 (Bankr. S.D.N.Y. 2013).

[3]   Although the Debtor's personal liability was discharged in the prior chapter 7 case, BB&T and Oak Grove still hold claims that may be treated in this chapter 13 case. *See In re Wimmer*, 512 B.R. 498, 509 (Bankr. S.D.N.Y. 2014) ("[T]he *in rem rights* of [a secured creditor] create a secured claim in the bankruptcy case notwithstanding the discharge of personal liability [in a prior chapter 7 case].").

[4]   Section H of the Plan provides:

      Debtor's interest in [the Property] shall vest to BB&T . . . upon confirmation of the Plan pursuant to Sec. 1322(b)(8), 1322(b)(9) and 1322(b)(11) of the Bankruptcy Code . . . . The confirmation of

Together with the Plan, the Debtor filed the Motion now before the Court. Relying on

several recent bankruptcy court decisions in which debtors were permitted to surrender real

property and vest title in a secured creditor through the chapter 13 plan process, the Debtor

argues that she should be permitted to do the same in this case. (*See* Motion ¶¶ 12, 20-27

(citing *In re Rosa*, 495 B.R. 522 (Bankr. D. Haw. 2013) ("***Rosa***"), *In re Watt*, 520 B.R. 834

(Bankr. D. Or. 2014) ("***Watt I***"), *vacated sub nom.*, *Bank of N.Y. Mellon v. Watt*, 2015 WL

1879680 (D. Or. Apr. 22, 2015) ("***Watt II***"); *In re Sagendorph*, 2015 WL 3867955 (Bankr. D.

Mass. June 22, 2015) ("***Sagendorph***"), and *In re Zair*, 535 B.R. 15 (Bankr. E.D.N.Y. 2015)

("***Zair***")).) The Motion argues:

> A recurring problem in chapter 13 proceedings is the continuing liability that
> debtors incur subsequent to surrendering real estate in bankruptcy . . . . Allowing
> a secured creditor to stall at will in disposing of real estate is of no benefit to the
> bankruptcy estate, including its creditors and debtor. A definitive determination of
> liabilities is required for all parties in interest.
>
> \*        \*        \*
>
> It is respectfully suggested that section 105(a), together with the clear
> interpretation of section 1322(b)(8) and (9), empowers this Court to fashion an
> appropriate remedy for chapter 13 debtors seeking to fully dispose of liability in
> underwater properties resulting from the Great Recession and, in many cases,
> caused by the very banks who refuse to timely and expeditiously dispose of
> surrendered property.

(*Id.* ¶¶ 15, 19.)

On October 29, 2015, BB&T filed its Opposition to the Motion. BB&T urges the Court to

reject the holdings of *Watt I*, *Sagendorph*, and *Zair* and instead agree with those courts which

have concluded that, although debtors may surrender property pursuant to section 1325(a)(5)(C),

they may not compel a secured creditor to accept the vesting of title where the creditor objects to

---

the Plan shall constitute a deed of conveyance of the Property when recorded with the appropriate
county land clerk of real estate records.

4

such treatment. (*See* Opp'n ¶¶ 11-25 (citing *Malave*, No. 14-11272 (ALG), *In re Rose*, 512 B.R. 790 (Bankr. W.D.N.C. 2014) ("***Rose***"), and *Watt II*, 2015 WL 1879680 (D. Or. Apr. 22, 2015)).) Relying principally on the decision of the district court for the District of Oregon in *Watt II*, which reversed the bankruptcy court in *Watt I*, the Opposition argues that, "although [section] 1322(b)(9) allows vesting in a third party, under [section] 1325(a)(5) that party must consent." (*Id.* ¶ 17.) To allow otherwise would "expose" the secured creditor in which the property is vested "to an unascertainable amount of liability that can come with the burdens of ownership that it did not bargain for when entering the mortgage." (*Id.* ¶ 19.) "Such a result," according to BB&T, "couldn't possibly be appropriate." (*Id.*)

Oral argument on the Motion was held on December 3, 2015, after which the Court took the matter under advisement.

## *Discussion*

Section 1322 of the Bankruptcy Code governs the contents of chapter 13 plans. *See* 11 U.S.C. § 1322. Pursuant to section 1322(b), a plan may, *inter alia*, provide "for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor," *id.* § 1322(b)(8), and "for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity," *id.* § 1322(b)(9). In addition, section 1322(b)(11) provides that a plan may "include any other appropriate provision not inconsistent with" the Bankruptcy Code. *Id.* § 1322(b)(11).

Section 1325 sets forth the requirements for confirmation of a chapter 13 plan. *See id.* § 1325.[5] As relevant here, section 1325(a)(5) provides that a plan may be confirmed only if one

---

[5]   As the plan proponent, the Debtor bears the burden of establishing that each of the requirements of section 1325 have been satisfied. *In re Lessman*, 159 B.R. 135, 137 (Bankr. S.D.N.Y. 1993).

of the following conditions is satisfied with respect to each allowed secured claim provided for

by the plan: (i) the creditor has accepted the plan, (ii) the plan provides for the property securing

the claim to be surrendered to the creditor, or (iii) the plan provides for "cram down" of the

claim. *Id.* § 1325(a)(5); *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 956-57 (1997)

(citations omitted). Thus, "[i]f a secured creditor does not accept a debtor's chapter 13 plan, the

debtor has two options for handling allowed secured claims: surrender the collateral to the

creditor or, under the cram down option, keep the collateral over the creditor's objection and

provide the creditor, over the life of the plan, with the equivalent of the present value of the

collateral." *Rash*, 520 U.S. at 962.

In this case, BB&T has not accepted the Plan, and the Debtor has not proposed to retain

the Property and cram down BB&T's secured claim.[6] Accordingly, as the court recognized in

*Rash*, the plan may only be confirmed if it calls for the Property to be surrendered to BB&T

within the meaning of section 1325(a)(5)(C). To determine whether it does so, it is necessary to

consider case law interpreting the effect of surrender on the rights of the debtor and the secured

creditor, including emerging case law on whether a plan that calls for the vesting of surrendered

property in a creditor may be confirmed under that section.

In order to surrender property under section 1325(a)(5)(C), a debtor does not need to

deliver physical possession of the collateral; instead, the debtor need only "make the collateral

available to the secured creditor." *In re McCann*, 537 B.R. 172, 179 (Bankr. S.D.N.Y. 2015)

(quoting *In re Plummer*, 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014)) (internal quotation marks

omitted). After surrender, "the secured creditor takes possession of the property and sells it in

---

[6]   Oak Grove, on the other hand, has arguably accepted the Plan by failing to object to confirmation. *See In re*
    *Sneijder*, 407 B.R. 46, 51 n.6 (Bankr. S.D.N.Y. 2009).

accordance with nonbankruptcy law." *First Brandon Nat'l Bank v. Kerwin (In re Kerwin)*, 996

F.2d 552, 557 (2d Cir. 1993). However, the mere authorization for surrender of property in a

chapter 13 plan does not constitute a transfer of title. *In re Gollnitz*, 456 B.R. 733, 736 (Bankr.

W.D.N.Y. 2011). "[U]ntil the property is actually sold pursuant to a foreclosure sale, title to the

property remains vested in the debtor." *In re Sneijder*, 407 B.R. 46, 52-53 (Bankr. S.D.N.Y.

2009).

Where property is surrendered in a chapter 13 plan, there is often an "expectation" that

the creditor will promptly enforce its rights to recover and sell the property in order to satisfy its

claim. *McCann*, 537 B.R. at 179. However, at times, secured creditors may fail to exercise these

rights, leaving debtors "'stuck with' the collateral" and "responsible for the maintenance, taxes,

and other obligations that come with owning property." *Id.* In such cases, at least prior to 2013,

courts regularly held that debtors could not force secured creditors to accept ownership of the

surrendered property. *See, e.g.*, *Arsenault v. JPMorgan Chase Bank, N.A. (In re Arsenault)*, 456

B.R. 627, 630 (Bankr. S.D. Ga. 2011) ("[A] plan cannot require a secured creditor to accept a

surrender of property or take possession of or title to it through repossession or foreclosure.");

*Canning v. Beneficial Maine, Inc. (In re Canning)*, 442 B.R. 165, 172 (Bankr. D. Me. 2011)

("Though the Code provides debtors with a surrender option, it does not force creditors to

assume ownership or take possession of collateral."); *In re White*, 282 B.R. 418, 423 (Bankr.

N.D. Ohio 2002) ("[T]he Code does not provide for the court or the debtor to direct the means by

which the secured creditor deals with the surrendered property."); *In re Service*, 155 B.R. 512,

514 (Bankr. E.D. Mo. 1993) ("Whether to proceed with its remedies [regarding surrendered

property] is within the sole discretion of [the secured creditor], and [a debtor] may not compel

[the secured creditor] to enforce its rights.").

In 2013, the bankruptcy court for the District of Hawaii considered whether a debtor could confirm a plan that provided for the surrender of real property and the vesting of title in the secured creditor. *See Rosa*, 495 B.R. at 523. The secured creditor did not object to the plan, but the chapter 13 trustee did, arguing that surrender could not transfer ownership of property to the secured creditor. *Id.* at 523-24. Although the court ultimately confirmed the plan based on the creditor's acceptance, it agreed with the trustee that section 1325(a)(5)(C) – the provision permitting surrender as a treatment for allowed secured claims – did not "fully validate" the plan, since the plan proposed to vest title to the property "in addition to" the surrender. *Id.* at 524. Thus, without the acceptance of the secured creditor, the court stated that the debtor's plan would not be confirmable. *Id.*

In 2014, the same issue came up in this Court in *Malave*. There, the debtor proposed a plan that, like the plan in *Rosa*, provided for the surrender of property and the vesting of title in the secured creditor. *Malave*, No. 13-13348 (ALG), at *1. Unlike *Rosa*, however, the secured creditor in *Malave* objected to the plan. *Id.* Judge Gropper distinguished *Rosa* on that basis and, relying on earlier cases holding that a debtor cannot compel a secured creditor to accept title to surrendered property, held that, "[w]hen a secured creditor timely objects to the confirmation of a plan that proposes to vest title in that creditor, the court cannot confirm the plan." *Id.* at *3 (citing *Service*, 155 B.R. at 514, and *In re Harris*, 244 B.R. 556, 557 (Bankr. D. Conn. 2000)).

Not long after *Malave*, the bankruptcy court for the Western District of North Carolina was also called on to decide whether a secured creditor could be compelled to accept title to property that was surrendered through a chapter 13 plan. *See Rose*, 512 B.R. at 792. In that case, the debtors confirmed a plan calling for the surrender of their real property, but did not provide for title to vest in the secured creditor. *Id.* at 793. More than a year after the plan was confirmed,

8

with the creditor having taken no action to recover the property, the debtors sought authority

from the bankruptcy court to quitclaim the property to the creditor. *Id.* Even in the absence of

opposition from the creditor, the court held that it could not compel the creditor to accept title to

the property, stating that such a result would "open[] a Pandora's box of possible injuries to

lenders." *Id.* at 796. The court went on:

> First, and obviously, forcing a lender to take title causes it to assume burdens of
> ownership for which it did not contract. The costs of foreclosure or repossession,
> coupled with ongoing obligations to insure the property and pay ad valorem taxes,
> may well exceed any present net realizable value.
>
> Second, if the property is subject to multiple encumbrances, requiring a senior
> lender to accept title to collateral would destroy that lender's priority lien position
> vis-à-vis junior mortgages, liens, and accrued HOA obligations. Foreclosure by
> such a senior lender cuts of junior mortgages and liens. By contrast, the quitclaim
> scenario makes the lender the owner of the property and, under the doctrine of
> merger, it takes title subject to these interests.
>
> A worse fate awaits the lender if the quitclaimed property is subject to environ-
> mental contamination. Making the lender the record owner of its collateral
> potentially subjects it to personal liability for existing environmental
> contamination . . . .
>
> The potential for personal liability also exists if the collateral is dilapidated,
> damaged, or otherwise a public nuisance.

*Id.* (footnotes and citations omitted). Accordingly, the court declined to adopt an interpretation of

section 1322(b)(9) that would permit debtors to compel their secured creditors to accept title to

surrendered collateral. *Id.* at 794-95.

Later in 2014, in *Watt I*, the bankruptcy court for the District of Oregon was asked to

determine whether section 1322(b)(9) permitted a debtor to vest title to surrendered property in a

secured creditor over that creditor's objection. The *Watt I* court disagreed with the approaches of

both *Rosa* and *Rose*, stating:

> The *Rosa* and *Rose* courts both took the position that [section] 1322(b)(9) could
> not be used to compel a lender to accept title to its collateral without its consent.

> However, nothing in the language of [section] 1322(b)(9) requires such consent.
> In the absence of such language, [the court] find[s] that a plan which provides for
> the vesting of property in a secured lender at the time of confirmation may be
> confirmed over the lender's objection.

*Watt I*, 520 B.R. at 839. Noting that section 1325(a)(3) requires a chapter 13 plan to be proposed

in good faith, the *Watt I* court stated that, in an appropriate case, "confirmation could be denied if

a debtor attempts to use [section] 1322(b)(9) to transfer property to a third party in order to

relieve him or herself of responsibility for nuisance or environmental problems associated with

it." *Id.* at 840. However, on the facts of that case, the *Watt I* court found no indication that the

plan was proposed in bad faith and confirmed the plan. *Id.* at 841.

On appeal, the district court for the District of Oregon vacated the ruling in *Watt I*. *See*

*Watt II*, 2015 WL 1879680, at *1. According to the district court, permitting the vesting of title

to property in a secured creditor would, in effect, create a "fourth option" for satisfying allowed

secured claims under section 1325(a)(5) of the Bankruptcy Code in addition to the three

recognized options of acceptance, cram down, or surrender permitted under sections

1325(a)(5)(A), (B), and (C), respectively. *Id.* at *5. This, according to the district court, would

"impermissibly transform[] the secured creditor's right [to recover its collateral] into an

obligation, thereby rewriting both the Bankruptcy Code and the underlying loan documents,

while at the same time belying the secured creditor's state-created property rights." *Id.* at *6.

In 2015, the issue came up in *Sagendorph*. In that case, the court approved the vesting

provisions of the debtor's plan, holding that "[a] plan which contains a provision for transferring

or vesting in the secured creditor the property that is its collateral would be compliant with and

confirmable under [section] 1325(a)(5)(C) because a transfer of property presupposes its

surrender by the transferor." *Sagendorph*, 2015 WL 3867955, at *4. The court found no conflict

between sections 1322(b)(9) and 1325(a)(5)(C), noting that "[t]he words 'vesting of property' in

[section] 1322(b)(9) and 'surrender the property' in [section] 1325(a)(5)(C) are different and

mean different things." *Id.* Thus, the court concluded:

> [A] correct application of the relevant provisions of the Bankruptcy Code permits
> a chapter 13 debtor to propose a plan that provides for transferring title to
> mortgaged real estate to the mortgagee in full satisfaction of its claim subject to
> the mortgagee's right to object, in which case the court must determine if the plan
> has been proposed in good faith, is otherwise in compliance with the Code, and
> should be confirmed.

*Id.*

After *Sagendorph*, the bankruptcy court for the Eastern District of New York decided

*Zair* and, in doing so, disagreed with *Watt II* and *Malave* and agreed, "for the most part," with

*Sagendorph*. *See Zair*, 535 B.R. at 22. Like the *Sagendorph* court, the *Zair* court found that,

"while surrender and vesting are different, they are not mutually exclusive, and the Bankruptcy

Code's plain language permits a debtor to deploy both options in a plan." *Id.* However, the court

expressly noted that surrender and vesting pursuant to a plan would not be in full satisfaction of

the secured creditor's claim and that, after a determination as of the value of the surrendered

collateral, the creditor would have the right to assert a deficiency claim against the estate. *Id.* at

24-25.

Following *Zair*, there have been several recent decisions which were not addressed in the

parties' briefs in this case: *In re Stewart*, 536 B.R. 273 (Bankr. D. Minn. 2015) ("**Stewart**"), *In re*

*Williams*, 542 B.R. 514 (Bankr. D. Kan. 2015) ("**Williams**"), and *In re Weller*, 2016 WL 164645

(Bankr. D. Mass. Jan. 13, 2016) ("**Weller**"). In the interest of completeness, the Court addresses

those decisions here as well.

In *Stewart*, the bankruptcy court for the District of Minnesota agreed with and adopted

the reasoning of *Sagendorph* and *Zair*, holding that, "[w]hile the 'surrender' concept found in

[section] 1325(a)(5)(C) and the 'vesting' concept embodied in [section] 1322(b)(9) are different,

they may nonetheless be used in tandem when providing for the treatment of a secured claim in a chapter 13 plan." *Stewart*, 536 B.R. at 277.

In *Williams*, the bankruptcy court for the District of Kansas came to a different conclusion. *See Williams*, 542 B.R. 514. In that case, the court held that, although section 1322(b)(9) contemplates that a plan may provide for the vesting of property in an entity other than the debtor, "it does not assure confirmation of a plan [that does so]." *Id.* at 521. This is because "[s]urrender and vesting are not equivalent: surrender means making the property available to be taken; vesting means transferring title." *Id.* (citation omitted). Since section 1325(a)(5)(C) only permits confirmation where "the plan provides for surrender of the collateral," the court held that the section "does not permit confirmation of a plan vesting title to collateral in the secured creditor over that creditor's objection." *Id.*

Finally, in *Weller*, Judge Boroff of the bankruptcy court for the District of Massachusetts disagreed with *Sagendorph*, the prior decision of that court, and held that "[a] plan which 'vests' property in a secured creditor does not fulfill the requirements of [section] 1325(a)(5)(C) and may not be confirmed over that secured creditor's objection." *Weller*, 2016 WL 164645, at *4. The court premised this holding the fact that, although section 1322(b)(9) lists the "optional provisions" of a chapter 13 plan, a debtor may not "substitute the *options* which may be proposed by a plan under [section] 1322 for *requirements* mandated by [section] 1325 for confirmation of a plan." *Id.* at *3 (emphasis in original). The court also declined to factor in the policy considerations in favor of and against permitting the vesting of title over the objection of a secured creditor, noting that "[t]he weighing of such competing considerations is the province of legislative and not judicial bodies." *Id.* at *4.

12

At its core, the disagreement in these cases and in this case is simple: whether a debtor "surrenders" collateral within the meaning of section 1325(a)(5)(C) when the plan proposes that title to the property will vest in the secured creditor. Cases such as *Watt I*, *Sagendorph*, *Zair*, and *Stewart* take the position that surrender and vesting "are not mutually exclusive," *Zair*, 535 B.R. at 22, and that a provision vesting title in a secured creditor may be used "in tandem" with surrender in accordance with section 1325(a)(5)(C), *e.g. Stewart*, 536 B.R. at 277. On the other hand, cases such as *Rose*, *Malave*, *Watt II*, *Williams*, and *Weller* hold that proposing to vest title to surrendered property in a secured creditor does not fall within section 1325(a)(5)(C) at all, and is instead an attempt to create an impermissible "fourth option" for the treatment of secured claims. *E.g. Watt II*, 2015 WL 1879680, at *5. Having reviewed the statute, the applicable case law, and the arguments advanced by the Debtors and BB&T, the Court is persuaded by the emerging line of cases, exemplified by *Rose*, *Malave*, *Watt II*, *Williams*, and *Weller*, which hold that a chapter 13 plan may not be confirmed over the objection of a secured creditor where the plan proposes to vest title to surrendered property in that creditor.

As recognized by those cases, section 1325(a)(5) is clear: with respect to each allowed secured claim provided for by the plan, the plan may be confirmed only if (i) the secured creditor accepts the plan, (ii) the plan crams down the claim, or (iii) the debtor surrenders the property to the creditor. 11 U.S.C. § 1325(a)(5). In cases such as this one, where there has been no acceptance by the secured creditor and no effort to cram down the secured claim, the only way that the plan can be confirmed is if it calls for surrender of the collateral to the creditor. *See Rash*, 520 U.S. at 962; *Malave*, No. 13-13348 (ALG), at *3. Courts have long recognized that surrender under section 1325(a)(5)(C) preserves the creditor's options under nonbankruptcy law, including the option to do nothing to recover its collateral. *See, e.g.*, *Service*, 155 B.R. at 514

13

("Whether to proceed with its remedies [regarding surrendered property] is within the sole

discretion of [the secured creditor], and [a debtor] may not compel [the secured creditor] to

enforce its rights."). As the court observed in *Watt II*, reading sections 1322(b)(9) and

1325(a)(5)(C) to permit a debtor to nonconsensually vest title to surrendered property in a

secured creditor would "transform[] the secured creditor's right [to recover its collateral] into an

obligation, thereby rewriting both the Bankruptcy Code and the underlying loan documents,

while at the same time belying the secured creditor's state-created property rights." *Watt II*, 2015

WL 1879680, at *6. This cannot be so.

The Court is not persuaded by the finding in *Zair* that preventing a debtor from vesting

surrendered property in a secured creditor over that creditor's objection "essentially eliminates

the usefulness of [section] 1322(b)(9)." *Zair*, 535 B.R. at 21. In making that finding, *Zair*

assumes that section 1322(b)(9) can only be used to vest property in secured creditors, and that

Congress must have intended for debtors to be able to vest surrendered property in secured

creditors with or without their consent. *See id.* But this is not so. Section 1322(b)(9) permits a

chapter 13 plan to vest property "in the debtor *or in any other entity*." 11 U.S.C. § 1322(b)(9)

(emphasis added). Pursuant to this section, a debtor might retain property under section

1325(a)(5)(B) while providing for title to vest in a nondebtor spouse, child, or wholly-owned

entity for tax or estate planning purposes, which would be confirmable if it complied with the

other provisions of section 1325. Or, as the court suggested in *Weller*, a debtor might provide for

the vesting of property in some other third party "that has consented (or from whom the debtor

plans to seek consent) . . . or in the hopes that such party will not object, and that its silence

might be deemed consent." *Weller*, 2016 WL 164645, at *3. Or a debtor might provide for the

vesting of completely unencumbered property, which would not implicate section 1325(a)(5)

14

because there would be no allowed secured claim subject to that section. None of these permissible uses of section 1322(b)(9) would override the rights of a secured creditor under section 1325(a)(5).

Nor is the Court persuaded by the policy considerations that were at issue in *Watt I*, where the debtors were "in limbo" based on the secured creditor's refusal to pursue foreclosure of the surrendered property. *Watt I*, 520 B.R. at 837. Unlike the creditor in that case, BB&T has indicated that it intends to pursue foreclosure of the Property in this case. And unlike the debtors in *Zair*, the Debtor here is not trying to rid herself of property that was destroyed by a natural disaster (Superstorm Sandy in the *Zair* case) in order to obtain the "fresh start" promised by the Bankruptcy Code. Rather, the Debtor has already received a discharge of her personal liabilities in her prior chapter 7 case. Now, she is merely trying to rid herself of any ongoing liabilities, which courts have held are the "byproducts of property ownership." *McCann*, 537 B.R. at 179 (quoting *Rose*, 512 B.R. at 794) (internal quotation marks omitted). Even if exceptional circumstances could justify authorizing a debtor to vest title to surrendered property in a secured creditor, no such circumstances have been shown to exist here.

### *Conclusion*

In view of the foregoing, the Court finds that the Debtor has failed to meet her burden of showing that the Plan may be confirmed under section 1325 of the Bankruptcy Code over the objection of BB&T. Accordingly, the Motion is **DENIED.**

**IT IS SO ORDERED.**

Dated: New York, New York
January 28, 2016

/s/ *James L. Garrity, Jr.*
JAMES L. GARRITY, JR.
United States Bankruptcy Judge